IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Charles Schwab & Co., Inc.,**<br><br>Interpleader-Plaintiff,<br><br>v.<br><br>**Dolores Carril; Martin Dario Lifschitz; and 3K Investments & Holding, S.A.,**<br><br>Interpleader-Defendants. | Civil Action Filing No: 4:25-cv-00112 |

**PLAINTIFF'S VERIFIED COMPLAINT IN INTERPLEADER**

Plaintiff Charles Schwab & Co., Inc. ("Schwab") files this Complaint in Interpleader against Dolores Carril ("Ms. Carril"), Martin Dario Lifschitz ("Mr. Lifschitz"), and 3K Investments & Holding, S.A. ("3K Investments"). Schwab states as follows:

**PRELIMINARY STATEMENT**

1.  Schwab seeks an order of interpleader regarding a corporate brokerage account maintained by Schwab in the name of 3K Investments. Ms. Carril and Mr. Lifschitz (collectively, the "Interested Parties") are listed as the two authorized agents and beneficial owners on the account. However, the Interested Parties are undergoing a divorce proceeding in Argentina and have made and continue to make conflicting demands upon Schwab regarding the account.

2.  Importantly, the Interested Parties do *not* contest that both of them were originally listed as authorized individuals on the account. However, Mr. Lifschitz and/or 3K Investments now contend that Ms. Carril's authorization was automatically revoked when she transferred certain ownership interests in 3K Investments to non-party Nomad Consulting & Holdings S.A.

Ms. Carril disputes that contention, claiming she "did not actually sell" her shares of 3K Investments and that the alleged transfer was "fictitious."

3. Schwab is merely a neutral stakeholder and is not in a position to weigh the Interested Parties' competing claims. Yet, the conflicting claims put Schwab at risk of exposure to double liability. Indeed, the Interested Parties have threatened Schwab multiple times for not following their unilateral instructions regarding the account. Schwab therefore brings this interpleader action so that the Court may direct Schwab as to the proper resolution of the Parties' competing claims regarding the account.

4. By filing this action, Schwab puts on notice any other interested party and any such party should come forth and state its claim, if any. If the named Interested Parties are aware of any other person or entity who may have such a claim, they should notify such persons or entities of this action immediately. All interested parties known to Schwab are identified as named parties in this action.[1]

## PARTIES, JURISDICTION, AND VENUE

5. Schwab is a citizen of Texas. Schwab is a Texas corporation with its principal place of business in Texas. Schwab moved its headquarters to Westlake, Texas effective January 1, 2021. Schwab is registered to do business in Texas.

6. Ms. Carril is a citizen of Argentina.

---

[1] Schwab submits this interpleader complaint without prejudice to its ability to move to compel to arbitration any claim asserted against it by any individual or entity arising out of or relating to an account held at Schwab or any other relationship with Schwab. Schwab expressly reserves and does not waive any right to assert that any such claim or action against it should be directed to proceed in arbitration in accordance with the express terms of the mandatory arbitration provisions contained in Schwab's written agreements. This filing is not to be construed as a waiver and, by filing it, Schwab is not invoking the litigation processes of this Court contrary to such arbitration provisions.

7. Mr. Lifschitz is a citizen of Argentina.

8. 3K Investments is a citizen of Panama. 3K Investments is a Panamanian company with its principal place of business in Panama City, Panama.

9. Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(c)(3), which provides that "a defendant not resident in the United States may be sued in any judicial district."

10. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interests and costs, and there is complete diversity of citizenship between Schwab and the Defendants.

11. All conditions precedent to the filing of this action have occurred.

12. Defendants are subject to personal jurisdiction in this Court because they submitted an application to do business with Schwab in Texas, they opened the brokerage account at issue with Schwab in Texas, and they have transacted business with Schwab in Texas from December 2022 through the present.

## FACTS

### I. The 3K Investments Account

13. Schwab maintains and is custodian of a corporate brokerage account no. XXXX-7336 (the "Account") in the name of 3K Investments. The Account has a net worth of approximately $916,555.18.

14. At all relevant times, 3K Investments' use of the Account has been subject to and governed by the Schwab One® Account Agreement.

15. A copy of the Schwab One Account Agreement that was in place when the Account was opened is attached hereto as **Exhibit A**.

16. In agreeing to be bound by the terms of the Schwab One® Account Agreement, Defendants agreed that Schwab may modify the terms from time to time, including by rescinding existing provisions or adding new provisions. (*See* Ex. A at § 51 on p. 56). The agreement expressly states: "By not closing and/or continuing to use your Account, you confirm your agreement to abide by the Schwab One® Account Agreement, as amended from time to time." (*Id.*)

17. The Schwab One Account Agreement has since been modified, and the current version is attached hereto as **Exhibit B** (the "Account Agreement").

18. The Account was opened in December 2022. Attached hereto as **Exhibit C** is 3K Investments' application to open the Account, which was also submitted in December 2022. The application lists Ms. Carril and Mr. Lifschitz as authorized individuals on the Account and beneficial owners of 3K Investments. Both of them signed the application.

19. With its application, 3K Investments also submitted the Minutes of a Special Meeting of the Board of Directors. (Ex. C at p. 28). The Minutes authorized the opening of the Account at Schwab and designated both Mr. Lifschitz and Ms. Carril as "authorized individual signator[ies] for and on behalf of the corporation, to sign over the new account and to transact any and all other business with or through Charles Schwab International." (*Id.*)

20. 3K Investments also submitted to Schwab the English Translation of its Articles of Incorporation attached hereto as **Exhibit D**. These Articles grant "a Broad and General Power of Administration and Disposition in favor of Martin Dario Lifschitz or Dolores Carril, so that they may represent the corporation individually in any country of the world, with the broadest powers of administration and disposition."

## II.  Schwab's Restriction of the Account

21.  Defendants have transacted business with Schwab in Texas from December 2022 to the present by applying for, opening, and using the Account.

22.  On August 23, 2024, Ms. Carril sent Schwab a letter (attached hereto as **Exhibit E**) stating that she is undergoing "a controversial divorce process" with Mr. Lifschitz. (*Id.*) She directed Schwab "not to allow any transactions, withdrawls [*sic*] or otherwise" on any "account, shares, bonds or any financial product" held by Schwab. (*Id.*) Ms. Carril concluded the letter by threatening: "In the event of non-compliance with the above request, I would subject both the financial institution/bank and the officers involved to the appropriate liability and responsibility." (*Id.*)

23.  Schwab restricted the Account in response to her demand letter as a cautionary measure in order to protect the Account's assets and the Account holder(s). Schwab notified the Interested Parties on August 27, 2024 that it had frozen the Account.

24.  The applicable Account Agreement between 3K Investments and Schwab expressly permits Schwab to take such protective measures. Indeed, the Account Agreement is clear that Schwab "may place trading, disbursement, or other restrictions on [the] Account as Schwab deems necessary in Schwab's sole discretion", including, (a) "in the event of a dispute regarding the assets in [the] Account" or (b) "in the event of a dispute between or among joint or multiple . . . authorized agents." (*See* Ex. B at § 48 on p. 55). In addition, the Account Agreement further provides that the account holder "agree[s] to indemnify and hold Schwab harmless from any . . . expenses (including reasonable attorneys' fees) caused by or related to any restriction placed on your Account…." (*Id.*)

25. Schwab's restriction of the Account is also consistent with the equitable relief afforded by federal interpleader jurisprudence and Fed. R. Civ. P. 22.

### III. The Interested Parties' Conflicting Claims and Threats

26. On November 15, 2024, 3K Investments' counsel, Scott Rubman, sent Schwab correspondence (attached hereto as **Exhibit F**) in which Mr. Rubman acknowledged that Ms. Carril was originally "an Authorized Individual to the account." However, he went on to allege that Ms. Carril transferred her ownership shares in 3K Investments "out of her name" on August 14, 2022 and, as a result, "was removed as an authorized signatory." Mr. Rubman therefore asked Schwab to release the freeze on the Account.

27. On December 5, 2024, Schwab responded to both Interested Parties and explained that it could not release the Account, as it could not make a determination regarding the Interested Parties' conflicting claims. Schwab reiterated that the Interested Parties could submit either a court order or notarized joint letter of authorization regarding the treatment of the Account going forward.

28. On December 5, 2024, Mr. Rubman responded by sending the letter attached hereto as **Exhibit G**, wherein he demanded that Schwab "forward this file to an attorney" for handling.

29. Minutes later, Ms. Carril responded by email, again demanding that Schwab keep the Account restricted and threatening to hold Schwab liable for any "non-compliance" with her instructions.

30. Mr. Rubman replied to Ms. Carril's email the next day by threatening Schwab: "[T]he improper block of the account of 3K is, among other things, a breach of your fiduciary duty, and may violating [*sic*] S.E.C. (sec 210) and FINRA rules (Sec. 15c3c) subjecting your company to suspension, fines and penalties."

6

31. In light of the Interested Parties' competing threats and demands, Schwab retained outside counsel to assist with this matter. On January 17, 2025, Schwab's counsel wrote to Ms. Carril, copying Mr. Rubman, to address the Interested Parties' dispute over the Account. Among other things, Schwab's counsel stated:

> Schwab's records currently identify both you and Mr. Lifschitz as authorized agents on the 3K Investments account, with Mr. Lifshitz identified as the primary contact. However, I understand from Mr. Lifschitz's attorney (copied here) that you sold your shares in 3K Investments and are no longer an owner of that company.
>
> **Please confirm that Schwab should remove you as an authorized agent from the 3K Investment account**

(*See* **Exhibit H**, emphasis in original).

32. Ms. Carril replied to the January 17 email on January 21, 2025, disputing that she transferred her ownership interest in 3K Investments. Ms. Carril stated: "The truth is that I did not actually sell the shares of 3K Investments & Holding S.A. The transfer of the shares of 3k Investments & Holding S.A. was a fictitious act…." (Ex. H). Ms. Carril indicated that the issue of the purported sale of her 3K Investments shares is part of "litigious legal proceedings" that she was initiating against Mr. Lifschitz in Argentina. (*Id*.) She therefore instructed Schwab "to maintain the restriction on the 3K Investments Account" and threatened: "In the event of failure to do so, I will hold both the financial institution/bank and the official involved liable for any damages." (*Id*.)

33. That same day, 3K Investments' lawyer, Mr. Rubman, also wrote to Schwab's counsel and provided additional documents that he claimed related to Schwab's alleged "improper restriction" of the Account. (**Exhibit I**). The documentation included a letter purportedly from Diego Ivan Lifschitz—a Director of 3K Investments and presumably a relative of Mr. Lifschitz— stating that Ms. Carril "is no longer authorized to act on behalf of" 3K Investments." (*Id.*) The

7

documentation also included another letter purportedly from Ana Maria Moreno Quiroz, a Director and Treasurer of 3K Investments, indicating that Ms. Carril "ceased to be a shareholder" of 3K Investments and her "Broad and General Power of Administration and Disposition" for the company was "revoked" on August 15, 2022. (*Id.*)

34. Schwab's counsel responded again that Schwab simply was not in a position to weigh the merits of the Interested Parties' conflicting statements and demands regarding the ownership of 3K Investments and the authorized signatories on the Account. (**Exhibit J**). In response, Mr. Rubman admitted: "I know nothing about the divorce nor anything about Ms. Dolores Carril's unfounded allegations." (*Id.*) Nonetheless, he continued to dispute Schwab's allegedly "wrongful retention" of the Account. (*Id.*)

35. That same day, January 21, 2025, Ms. Carril's counsel, Andres Beccar Varela, also wrote to Schwab's counsel, stating: "I ask the account remain as it is with no changes." (**Exhibit K**).

36. On the next day, January 22, 2025, Mr. Rubman sent Schwab's counsel the correspondence attached hereto as **Exhibit L**. Therein, he disputed "the mere conclusions and fabricated events in Ms. Carril's communications." (*Id.*) He threatened that Schwab's restriction of the Account "may be a violation of the regulations of Financial Industry Regulatory Authority (FINRA)." Mr. Rubman further threatened that Schwab's undersigned counsel might be subject to sanctions "under the Georgia Rules of Professional Conduct (see Rule 3.1, 4.4)" because she had informed the Interested Parties that Schwab might be forced to seek interpleader relief. (*Id.*) Mr. Rubman threatened that, if Schwab did not unfreeze the Account, he was authorized "to make a formal complaint to the appropriate governing authorities." (*Id.*)

37. That same day, Ms. Carril's lawyer, Andres Beccar Varela, also wrote to Schwab's counsel again. (Ex. K). Mr. Varela reiterated that the Interested Parties "are currently involved in various litigation proceedings in Argentina." (*Id*.) He noted that Mr. Rubman is not Mr. Lifschitz's lawyer in those proceedings, so "he is probably not familiar with that situation due to that fact." (*Id*.) Mr. Varela stated that the Interested Parties' "legal matters are following the courts procedures and legal time," but that he would provide additional documentation as soon as possible. (*Id*.)

38. As it now stands, Schwab has attempted, in good faith, to help facilitate an agreement between the Interested Parties in an effort to avoid involving the Court and incurring unnecessary cost and expense. Unfortunately, the Interested Parties have not reached an agreement.

39. In light of the conflicting instructions Schwab has received from the Interested Parties, and their reoccurring threats to Schwab and its counsel, Schwab is unsure how it should act with regard to the Account.

## FIRST CAUSE OF ACTION
## CLAIM FOR INTERPLEADER

40. Schwab hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

41. Schwab is not in a position to weigh or otherwise decide the Interested Parties' conflicting claims regarding the Account. By reason of the conflicting claims, Schwab cannot, with safety and without being exposed to double or multiple liability, follow the instructions of either Ms. Carril, on the one hand, or Mr. Lifschitz and/or 3K Investments on the other. If Schwab were to follow the instructions of one of the Interested Parties over the other, another Interested

Party could conceivably look to Schwab to recover any damages alleged to have been incurred as a result.

42. Schwab stands ready to accept direction from the Court or through agreement of the Interested Parties as to the restriction of the Account or how the Account should otherwise be treated.

43. Upon order of the Court, Schwab is entitled to be discharged from all liability related to Schwab's restriction of the Account and is entitled to be dismissed from this action.

44. Schwab is also entitled to an award of its attorneys' fees and costs incurred in connection with this action.

45. Indeed, the Account Agreement expressly provides: "You agree to indemnify and hold Schwab harmless from any claims, losses, damages, or expenses (including reasonable attorneys' fees) caused by or related to any restriction placed on your Account . . . ." (Ex. B at § 48 on p. 55).

46. Additionally, "it is well settled that the court has discretion to award costs, including reasonable attorney's fees, to a disinterested stakeholder in an interpleader action whenever it is fair and equitable to do so." *Jackson Nat'l Life Ins. Co. v. Dobbins*, No. 3:16-CV-0854-D, 2016 U.S. Dist. LEXIS 107456, *8 (N.D. Tex. Aug. 15, 2016) (citing *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999)).

47. Schwab has not acted and is not acting in collusion with any party claiming an interest in the Account.

## PRAYER FOR RELIEF

WHEREFORE, Schwab respectfully requests:

1)  That the Court allow Schwab to interplead the Account and, in this event, because of the tax consequences and other issues associated with the liquidation of securities or other funds or holdings that may fluctuate in price, that the Court direct Schwab to maintain custody of the Account and keep it restricted pending a court order or appropriate mutual direction from the Interested Parties regarding the Account;

2)  That the Court require the Interested Parties to answer this Complaint and state any claims they may have to the Account;

3)  That the Court enjoin the Interested Parties from prosecuting against Schwab any claims related to Schwab's restriction or maintenance of the Account;

4)  That Schwab be discharged from any and all liability;

5)  That the Court award Schwab its attorneys' fees and costs, payable out of the Account; and

6)  That the Court provide Schwab with any such other and further relief as the Court shall deem just and appropriate.

Respectfully submitted this 7th day of February, 2025.

BALLARD SPAHR LLP

*/s/ Joel F. Newell*
Joel F. Newell; #24137409
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Phone: 602.798.5459
Facsimile: 602.798.5595
Email: newellj@ballardspahr.com

*Attorney for Interpleader-Plaintiff*

## **VERIFICATION**

Before me, the undersigned Notary Public in and for said County and State, on this day personally appeared Samitha Moodley a duly authorized agent of Charles Schwab & Co., Inc., who after being duly sworn, did on his oath depose and state that under penalty of perjury, the statements contained in the above and foregoing Complaint are within his personal knowledge and are true and correct.

Executed this 5th day of February, 2025.

_____
Samitha Moodley
Senior Manager
Charles Schwab & Co., Inc.,

State of Texas

County of Denton

Subscribed and sworn to, before me, this 5 day of February, 2025.

_____   My Commission expires 2-10-26
Notary Public Signature (Seal)

(Seal)
LASHANA ALEXANDER
Notary Public, State of Texas
Comm. Expires 02-10-2026
Notary ID 129249446